First, Judge Johnstone and I would like to thank our colleague, Judge Simon, from the District of Oregon. He has a full caseload in Portland, but he has very generously and kindly agreed to help us out on the Ninth Circuit. He's sitting this week, Wednesday, Thursday, Friday. We'd also like to thank his law clerks. This adds a lot to their burden and docket as well, and we're grateful for all their great work. So, thank you. And then we would also like to thank all of you for coming to the courthouse today. We have very special guests all the way from Down Under. We have students from the University of New South Wales in Australia. Thank you very much for coming to the Ninth Circuit. There are a number of cases that were submitted on the briefs and record. I'd like to just identify those. One is Perez Peralta v. Garland. Another is Engineer.AI Corporation v. AppiePie, LLC. Another is Geico Advantage Insurance Company v. Wailert. So, we have two cases on for argument today. If we could please start with Jarrett v. O'Malley, and if counsel for the appellant would just let us know, how much time would you like to reserve for your rebuttal? You have ten minutes total. So, what would you like? I'd like to reserve three minutes for rebuttal. Thank you. All right. Go ahead, please. So, good morning. My name is Jesse Kaplan. I represent Kelly Jarrett, who is the appellant. If you are dealing with these social security disability cases, probably the first three things that you ask are, how old is the claimant? What are the claimant's impairments? And what is the past relevant work of the claimant? Here, Kelly Jarrett was always, she was always being asked to be between ages 57 and 60, which are kind of golden years for being found disabled under the regulations. And, however, that advantage is somewhat taken away by the fact that her impairments that she presents were all psychiatric. However, the third thing that I mentioned, past relevant work, is perhaps one of the things we can talk about today. She... Counselor, I do want you to spend a lot of time on past relevant work, but before we get there, I noticed that you recently filed the April 4, 2024 decision by the different ALJ, probably more physical issues than the emotional or mental issues. Legally, what, if anything, are we allowed to do with this new ALJ's decision and the new finding of disability in a later time period? I'm unaware of any particular purely legal way to use it. And, you know... What would you like us to do with it? How do you want us to consider it? Well, I mean, mainly just one thing, and that is to recognize that... I mean, to recognize that the decision did credit the treating psychiatrist, Dr. Rappaport, which was, of course, why she was discredited by the ALJ in the case that we're here talking about. So that's something to think about. Otherwise, the fact that she was granted illustrates what I was saying about the advantage of her age and that the age factor made it so easy to grant that that's why it looks like that was why she was granted. But I'm not sure that that really is the ranking of the impairments. It's not as if she suddenly were seriously physically impaired where before I'm sitting here... Let me ask you about Dr. Rappaport, at least for the case here. So that's the time period, what, 2016 to what, May of or March of 2021 when this decision came out. If you credit Dr. Rappaport, there's enough in Dr. Rappaport's own treatment records, her notes, her recording of what the plaintiff said to her that actually wouldn't support Ms. Jarrett's claim. So would it really make a difference if you credited the full opinion when there seems to be quite a bit in her own records that sort of undermine that opinion? I don't think there's... I assume the kinds of things you're talking about are that periodically my client, Kelly Jarrett, was recorded saying I'm feeling better, I'm feeling better, medication is working. And the question of just how normal or mental status exams were, is that basically what you're saying? Yeah, the adequate memory, yeah, the otherwise normal mental status, the sufficient attention concentration, appropriate insight and judgment. And then if you add on top of that, Ms. Jarrett's prior work was as a property manager and she's going on mission trips to Kenya doing exactly that type of work, right? I mean, in Kenya she was painting a house, setting up furniture, building a bunk bed, laying down flooring, and then she was even doing her past property management work with the residents at the mobile home park where she used to be the property manager. So if you look at what she previously did and what she currently is doing after her disability symptoms have appeared, it actually seems somewhat consistent with her prior work. I hope you will change your mind about that. First place, I mean, she tried to do what was kind of the same job, property manager of a mobile home park, only before she was the property manager for multiple mobile home parks, and she did that for years and years and years. Then she had, we could call it a mental breakdown, and she tried to return to work being the manager of just one mobile home park. And the way you put it I don't think is correct. She only did that for a month or two or three. She couldn't do it. And the fact, so the fact that she couldn't do an easier version of her own job is a significant datum suggesting that really she can't work rather than the opposite. Of course, that trip to Africa business is sort of, I'm not sure what the word is, but it's a wonderful thing for an administrative law judge who wants to deny the case to latch onto. But there is, there are things in the record including, I mean, she tried to explain, she did, there is something in the record in her own writing, I guess it's easier to hear. Oh, okay, page 140 of the excerpts of record where she tries to explain, but she had actually, I'm not sure to what extent this is completely clear in the record, but she had actually led these church trips to Africa that did good deeds in years past. And she's, the record does reflect that this was different, that she went with a few friends and they didn't have any amount of work they had to get done and she was able to do only as much work as she felt like doing. So that's that. The only other things, I think you took off in this direction talking about evaluating Dr. Rapoport rather than evaluating her or third parties and as far as that goes, the only other kind of evidence that was used against her was the totally standard business of plucking things out of the function report, do you cook? Yes, sometimes and so on. You began by saying you wanted to talk about past relevant work and your time is running out so I wanted to make sure you had that opportunity. Well I think that there's two things going on here that, two things presented by this case that are somewhat unusual even though the two areas, evaluating medical opinions and evaluating lay witnesses are very standard and one is that I've asked this court to recognize in a way that it hasn't before that past work, a claimant's past work history can be a very positive factor. Kelly Jarrett worked every year of her life, has four quarters of coverage for every year of her life since the age of 17 until the age of 56 when she stopped working at the first of those jobs. Then she fails doing the easier one of those jobs rapidly and that's, my position is that's the far more salient factor than anything else including a trip to Africa let alone the fact that some days out of the week she can cook and that she can bathe with the help of her husband or whatever which is taken out of function reports and I've cited a number of cases where from I think four other circuits I'm not sure that the list couldn't be expanded further. The idea of recognizing the relevance of a claimant's good work history goes back to the 1980s but there isn't any case in this court that has ever said that that's a positive factor and the idea that I'm trying to present here is you've got this really tangible, meaningful positive factor of her having worked all those years, been unable to succeed and instead of looking at that, the only things that are thrown up against her really in both of those two areas of the two issues of doctors and lay witnesses is just kind of standard things. Maybe I'll make a point in my rebuttal about that. I seem to be running out of time except the clock is going up again. All right. Thank you. You've used your time but I'll give you time for rebuttal. Good morning, Your Honors. Elizabeth Feer on behalf of Martin O'Malley, the Commissioner of Social Security. This is a record where the claimant is alleging that she's disabled because of crippling anxiety but you have medical opinions that range from Dr. Klein who found that she didn't even have severe mental impairments to Dr. Rapoport who issues a couple different opinions about her functionality which actually do improve from 2018 to 2020 and then Dr. Dennis who saw all of this evidence and in March of 2020 found the claimant was only mildly to moderately limited. The ALJ synthesized all of this evidence including claimant's admitted daily activities as well as her ability to engage in this missionary trip to Africa which was considerable activity. She had to plan for it. As is clear from her medical records, she had to get vaccinations in preparation for this trip. She actually led people on this trip and was doing work that was, as Judge Koh noted, similar to— How many trips were there? The record wasn't clear whether it was two or— I thought there were two and then in the testimony, she says there's only one. So I'm not entirely clear on that. I know she was planning two and she went on one for sure but given what she said at the testimony, it seems like she might have only gone on one. Counsel. I'm sorry. Go ahead. Oh, thank you. The Social Security Administration Regulation 16-3P states that the ALJ will discuss the factors pertinent to the evidence of record and this ALJ did not discuss the—Ms. Koh, in terms of it being any type of relevant factor for how to interpret her symptom testimony. From those two facts, is it a reasonable inference that the ALJ did not consider 50 years of past relevant work to be pertinent to the decision? I don't think so, Your Honor, because there's a difference between what an ALJ has to consider and what an ALJ has to articulate in the decision and we can discuss that in the context of the lay witness statements later on. But I'm more interested in the statement, but in 16-3, it says we will discuss the factors pertinent. Doesn't that mean something? Indeed. The ALJ, there is no requirement anywhere, and 16-3P is not a regulation, it's a ruling. There's no directive in regulations or in this Court's case law that an ALJ has to discuss a claimant's past work history. The ALJ is the one who decides what's pertinent, what needs to be discussed. Of course, the ALJ is required to discuss certain kinds of medical evidence and symptom testimony from the claimant. But everything else is a matter of case by case. And there's nothing here that says this ALJ has to discuss it. My question is, if there are other circuits that say an ALJ has to consider it, but the Ninth Circuit doesn't have that requirement, and the fact that the ALJ didn't discuss it, is it a fair conclusion that the ALJ, this ALJ sitting on the Ninth Circuit, didn't consider past 50 years of work history pertinent? Didn't consider it pertinent enough to address in the decision, yes. That's a fair assessment. And I would like to point out, though, that aside from claimant's steady work history, she also, when she started, when she saw Dr. Rapoport in, I think it was January of 2018, right around the time of her alleged onset date, she said she was unhappy with her current employer and wanted to quit. So that's, you know, she, yes, she worked, but, you know, 56, 57 is not really retirement age. So she decided that she didn't want to do that work anymore. But why is it 39 years of working not relevant? This is a person who wasn't malingering for nearly 40 years actually worked. Why isn't that relevant to trying to decide her credibility about her symptoms now and her ability to work, I guess, since her onset, disability onset date? Why isn't that relevant? Why shouldn't that be considered? Again, considered is not the same as articulating or having any requirement to articulate. Oh, but not even discussed. How are you supposed to review an administrative record and get inside the ALJ's mind if there's no record of the ALJ's consideration of issues they're required to consider? Well, again, the ALJ is not required to articulate anything about work. Required to consider. How do we know that? Well, if you look at the ALJ talks about what the claimant did as past work, the ALJ finds that the claimant can't return to that past work because it was highly skilled and limited her to a functional capacity that is simple and repetitive. So, you know, the ALJ is considered what she did in the past and what she's not capable of continuing to do. And then for as far as what the ALJ is thinking, you look at everything else that she talked about. She addressed these medical opinions and prior administrative medical findings and explained how they were persuasive or not persuasive based on their consistency with the record and the supportability of the sources themselves provided. And with Dr. Rapoport, as Judge Koh noted, her treatment records are just not consistent with a catastrophic anxiety condition that would not allow this claimant to do this simple work which the ALJ found that she could perform. But what's your position? Should we join the other four circuits and require that a positive work case? Why not? Why would that not be relevant to assess credibility? Again, the agency, for a court to keep requiring ALJs to discuss specific pieces of evidence is not consistent with the regulatory requirements that the ALJ specifically has to address a claimant's symptoms. Other things might, you know, factor into that consideration. But to say in every case an ALJ has to discuss past relevant work and that history is going to hamstring the agency and situation. But it's already said in every case that the ALJ shall consider that work history is one of the things that should be considered. So how is this not just holding the agency to its own regulations? As long as it's not a statutory factor, the agency can change its regulations. But if it's got the regulation, how are we supposed to enforce it on the record? Again, Your Honor, the ALJ is required to discuss the claimant's symptom testimony. The ALJ is not required to discuss any of those other factors. There's no case law that says an ALJ's decision doesn't stand unless she discusses every single factor in a regulation. I understand the distinction you're drawing between discussion and articulation. And this isn't a question of magic words or anything. But the agency itself requires the ALJ includes prior work record in consideration of other evidence. It should be up to the ALJ to decide whether or not the record before her requires that discussion. We will consider all of the evidence presented. If that's the agency's position, it should change the regulation, should it not? Your Honor, again, there's a difference between considering and articulation. There's nothing in any of our regulations or any of our subregulatory materials that requires an ALJ to discuss one specific factor in any of the regulatory provisions that talk about symptom testimony. There is not one thing in any of that that the agency says, you are required to discuss this element. And for this Court to decide to pick one thing out of all of those factors that go into an ALJ's consideration of a record would be, it's not consistent with an ALJ's duty to review a record and decide what's pertinent, aside from the things that she has to discuss, which are the symptoms, the medical opinion evidence. Let me get a clarification here. I understand your point that you don't want a requirement that an ALJ has to explicitly discuss it. But what about requiring the ALJ to consider it? What's your view on that? Well, that's already in the regulatory process. It already says, we will consider such things as your work history. That's in 404.15.29. So that's already there. And in this particular case, for my opponent to suggest that the claimant's steady work history is the single most important factor in a case that has very benign — she obviously has limitations. The ALJ limited her from her skilled work to a simple repetitive task. She has symptoms. She has problems with alcohol abuse. She has problems with anxiety. But the fact that the treatment records and Dr. Rapoport's treatment records are in four different exhibits in this record, they're all relatively consistently showing — I'm sorry, Your Honor. We give ALJs a great deal of deference, and I think quite appropriately. We give them a great deal of deference, provided that they consider the relevant factors and don't consider irrelevant factors. Why is it not appropriate to ensure that they have considered the relevant factors by asking that they mention the factors that they consider? Again, Your Honor, it shouldn't be up to a court to require — to single out from this, you know, very vast set of factors that an ALJ may discuss or may consider. I'm sorry. For a court to decide one is more important than the other. It depends on the record. And here, you know this ALJ was aware of Klayman's past relevant work because she talked about it, and she concluded that Klayman wasn't capable of performing that level of skilled work anymore. So you can understand from this record. You can be confident from this record that this ALJ was aware of that. But there's other things in this record that detract from that. Again, it's the medical evidence that the ALJ addressed, the medical opinion evidence, her pretty consistent activities of daily living, which are actually supported by both her son in Exhibit 3E and her husband in Exhibit 9E. They all lay out a very pretty normal set of daily activities, including hobbies. And then again, we have this very significant trip to Africa that Klayman was able to perform. You cannot look at this record and say the fact that she worked steadily until she decided she didn't like working for this employer is more important than anything else the ALJ talked about in this decision. Let me ask you. So you have consider, you have articulate and discuss, but then if you look at the Seventh Circuit and the Third Circuit, they say give substantial credibility or entitled to substantial credibility that the work history gives the symptom testimony of the Klayman substantial credibility. Why shouldn't we follow the Seventh and the Third Circuit? The Eighth Circuit just says consistent work record may support the credibility of a Klayman subjective complaint. Well, I'm going to key on the word may. It may. Right. An ALJ may decide. No, but the Seventh and Eighth say is entitled to substantial credibility. Well, credibility is not a word that we, the agency, uses anymore. SSR 16-3P has explained that that's not a terminology that we use. Klayman's had to substantial consideration when evaluating symptom testimony. Again, I'm going to say it's not appropriate for a court to decide that one factor in everything that an ALJ is required or allowed to consider set forth in 1529-16-3P to decide that one of those factors is above all else something an ALJ has to discuss. And again, I'm going to say you can understand from this ALJ decision that she was aware of Klayman's history. Klayman's history is not more important than, work history is not more important than everything else in this record, unless you have any further, I'm happy to answer any further questions.  Let me see if my colleagues have any more, no more questions.  Thank you very much. And you've gone over your time. Thank you. Mr. Kaplan, you'll get two minutes.  I don't think I want to get too deeply into the issue that seems to be what concerns the court, but I want to emphasize the difference between this solid, tangible work history, the fact that she was not able to, she immediately failed at a simpler version of the same job. And I tried to think of a better word, but I was also listening. So, this is not the best word, but the sort of diaphanous quality of throwing her activities of daily living, the relatively benign mental status exams, and the fact that she says to her, she is recorded by her psychiatrist as saying on multiple occasions, I'm feeling better. Mr. Kaplan, I guess just on the work history, set aside the procedural question, if the ALJ did consider the work history, what about the work history would compel us to reach a different finding? I think that the record has been over-characterized by my opponent as benign, but the way I put it in my brief is that there's something a little unbelievable about the situation in that Ms. Jarrett traces her problems to the death of her son in 2013 or 14, but she doesn't stop working for a few more years after that. And anxiety and depression, there is, of course, a diagnosis of PTSD here too, anxiety and depression seem like less serious problems than, say, schizophrenia, and you think, well, she should get better after a few years. But she didn't, and I guess that's another point you can get out of the second ALJ decision, is she still has these problems, and she's still treating with Dr. Rappaport, and now Dr. Rappaport is being credited. I think I've used up my time, but I want to suggest that when you're dealing with depression and anxiety, you don't expect to have really dramatic mental status exams unless the person is at a really crisis sort of level, and there's some agreement, and the decision even admits that there are problems with attention, concentration, and memory. And I want to say one other thing. To characterize these function reports as benign or whatever is really not right, and I just want to draw attention to the fact I counted up the number of times that her husband, in one function report, used the word she can do this unless she is overwhelmed. She can do this unless she is overwhelmed 17 times. Can I ask you about the work history? So I just was quoting with your opposing counsel the Seventh Circuit case about entitled to substantial credibility, but in that case, the claimant actually performed manual labor for years after neck surgery and the onset of disability symptoms. I also quoted the Eighth Circuit case, which said consistent work record may support the credibility, and in that case, the claimant was actively seeking clearance to return to work after the onset of disability symptoms. So I'm just wondering if even we were to follow these other circuits, whether they're saying we think there has to be some desire to work even after your disability symptoms start, that shows that you're not malingering, right, there's something showing you're really trying to work. And if I look at Ms. Jarrett, she did return to work for one month in, you know, managing just one property instead of multiple, but that was only after the Social Security Administration had denied her disability application on reconsideration. So we don't have that same desire to go back to work in those three cases that I cited earlier. Those people, even after all their onset of symptoms, they're working after neck surgery, doing manual labor, they're actively trying to get clearance to go back to work, and we don't quite have that same clear evidence of desire to work after the onset of disability symptoms here. So how should we think about that? Well, you've got one or two other things. One is that she did continue to work for several years after the death of her son, which, at least in her mind, is like the sole cause of things. But she claims her disability onset date, which she claimed for anxiety and depression, was, what, 2016, and her son died in 2013. So there is a three-year difference there between those dates. And maybe you're making my point, or maybe you're not. I'm just confused. But that's point one, that she did continue to work after what was the precipitating event. But she says her onset disability symptom date is April 26, 2016. So... Yeah, and I think the reason for that is because she did fail immediately at the simpler job, and so that didn't have to count as work, and so she simply claims the entire claim period that she's entitled to from, you know, I'd have to look at the years which are a little bit confused in this case because of her having applied, as you say, but I think that's what's going on. I'm not that impressed by the continuing-to-try-to-work argument that you're making when you stack it up against the fact that she really did work, and she did try to return to work, and that's a pretty good indication that she can't work. When you have somebody who has always worked, the first thing they're thinking is not, okay, I'm going to now get disability benefits and not work. They're going to keep trying to work ordinarily, and I guess I wanted... Well, I guess I did make the point about these mental status exams, but I direct you to the fact that, number one, of course, she continued to have the same problems and was granted, as we see from that second ALJ case, and she did obviously continue to have these same mental problems. The function reports are describing someone very different from what is implied by this decision of denial. The function reports are describing somebody who is going to be overwhelmed over and over and over again, who's overwhelmed doing all the ordinary things of life periodically. You're six minutes over your time, so I'm going to ask you to just very quickly wrap up if there's anything... No, I'll stop. Thank you. Thank you very much. Thank you to both counsel for the very helpful arguments today. We really appreciate your help in trying to figure out this difficult case. Thank you.
judges: KOH, JOHNSTONE, Simon